IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH HEINZL, individually and on behalf of )
all others similarly situated, )
        Plaintiff, )
)
vs ) Civil Action No. 14-997
)
BOSTON MARKET CORPORATION, ) Magistrate Judge Mitchell
        Defendant. )

MEMORANDUM OPINION AND ORDER

Plaintiff, Sarah Heinzl, brings this action individually and on behalf of all others similarly situated against Defendant, Boston Market Corporation (Boston Market), alleging violations of Title III of the Americans With Disabilities Act, 42 U.S.C. §§ 12181 to 12189 (ADA). Specifically, she alleges that Boston Market's facilities are not fully accessible to and independently usable by individuals who use wheelchairs for mobility, as she does, because of various barriers in the parking lot.

Presently before the Court is Defendant's motion to dismiss the Amended Complaint for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), challenging Plaintiff's standing to bring this action. For the reasons that follow, the motion will be denied.

Facts

Plaintiff states that she is a resident of the Commonwealth of Pennsylvania who has a mobility disability and is limited in the major life activity of walking, causing her to be dependent upon a wheelchair for mobility. (Am. Compl. ¶¶ 2, 15.) She has visited Defendant's property located at 978 Greentree Road in Pittsburgh, Pennsylvania (the "Restaurant"). During this visit, she experienced unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking space and access aisle. She indicates that, on her behalf,

investigators examined the Restaurant and 27 other retail Boston Market locations in Pennsylvania, Ohio and Maryland and found the following violations: 1) the surfaces of one or more access aisles and one or more purportedly accessible parking spaces had slopes exceeding 1:48 (i.e., 2.1%); 2) a curb ramp extended into an access aisle; 3) portions of the route to the entrance were broken, i.e. not "firm, stable, and slip resistant"; 4) no spaces were designated as "van accessible"; 5) one or more purportedly accessible parking spaces was not marked with required signs; 6) a curb ramp along the route to the entrance had a flare with a slope exceeding 1:10 (i.e., 10.0%); 7) a grate in the surface of a purportedly accessible parking space would allow the passage of a ½ inch sphere; 8) no access aisle was provided adjacent to one or more purportedly accessible spaces; 9) a portion of the route to the store entrance had a cross slope exceeding 1:48 (i.e., 2.1%); 10) a curb ramp located in the route to the building entrance had a running slope exceeding 1:12 (i.e., 8.3%); 11) the purportedly accessible spaces were not the spaces nearest to the accessible route; 12) signs designating spaces as "accessible" were mounted less than 60 inches above the finished surface of the parking lot; 13) one or more access aisles adjacent to purportedly accessible parking spaces were less than 60 inches wide; and 14) the asphalt in a purportedly accessible parking space was broken and uneven, i.e., not "firm, stable, and slip resistant." (Am. Compl. ¶¶ 18-19.)

Plaintiff indicates that she is a resident of the Brookline neighborhood located in the South Hills area of Pittsburgh; that she frequently travels to Robinson Township for shopping, entertainment and doctors' appointments; and that she travels through the neighborhood of Greentree, passing by the Restaurant at 978 Greentree Road. She also travels through the Greentree neighborhood frequently to visit a family friend in Crafton. (Am. Compl. ¶ 23.) She estimates that she has dined at the Restaurant three to four times per year in the past few years

and states that she intends to return to the Restaurant as it is the closest and most convenient to her residence, but that numerous architectural barriers deter her from doing so. (Am. Compl. ¶¶ 24-25.)

Procedural History

Plaintiff filed this action on July 24, 2014. On August 26, 2014, Defendant filed a motion to dismiss for lack of jurisdiction, challenging Plaintiff's standing to bring this action. On September 16, 2014, Plaintiff filed an Amended Complaint (ECF No. 9).

Federal question jurisdiction is based on the ADA claim, 28 U.S.C. § 1331; 42 U.S.C. § 12188(a). Plaintiff alleges that the cited violations constitute "a failure to remove architectural barriers" in violation of 42 U.S.C. § 12182(b)(2)(A)(iv) and a failure to alter, design or construct accessible facilities after the effective date of the ADA in violation of § 12183(a)(1) and the appropriate regulations, which will deter her from returning to Defendant's facilities and that, without injunctive relief, she will be unable to fully access Defendant's facilities in violation of her rights under the ADA. (Am. Compl. ¶¶ 12, 35-40.)

She also brings this action on behalf of all others similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. See seeks a declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA and its implementing regulations, a permanent injunction directing Defendant to take all steps necessary to remove the architectural barriers and bring its facilities into ADA compliance, an order certifying the class she proposes and naming her as class representative and appointing her counsel as class counsel, payment of costs of suit, payment of reasonable attorney's fees and any other relief the Court deems just, equitable and appropriate. (Am. Compl. at 17.)

On October 3, 2014, Defendant filed a motion to dismiss the Amended Complaint (ECF

No. 11), to which Plaintiff responded on October 24, 2014 (ECF No. 18). Defendant filed a reply brief on November 4, 2014 (ECF No. 20). Plaintiff filed a surreply brief on November 6, 2014 (ECF No. 22).

Standard of Review

"A motion to dismiss for want to standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). The Court of Appeals has explained that:

> In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: "Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." Ballentine, 486 F.3d at 810 (citing Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). The Supreme Court most recently explained this standard in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009): "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955)….
>
> "A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). With respect to 12(b)(1) motions in particular, "[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007).

In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243-44 (3d Cir. 2012).

The Supreme Court has held that:

> In every federal case, the party bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The

4

standing requirement is born partly of "'an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.'" Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting Vander Jagt v. O'Neill, 699 F.2d 1166, 1178–1179 (C.A.D.C. 1982) (Bork, J., concurring)).

Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). The Court has explained that:

> In Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), we held that, to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc., 528 U.S. 167, 180-81 (2000). However, the manner in which standing must be supported depends upon the stage of the litigation at which the issue is raised: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Defenders of Wildlife, 504 U.S. at 561 (quoting Lujan v. National Wildlife Federation, 497 U.S. 871, 889 (1990)).

ADA Title III

Title III of the ADA "prohibits discrimination against the disabled in the full and equal enjoyment of public accommodations." Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 128 (2005). Specifically, it requires "places of public accommodation" to "remove architectural barriers … in existing facilities … where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), and to "design and construct facilities for first occupancy later than 30 months after July 26, 1990 that are readily accessible to and usable by individuals with disabilities," § 12183(a). Places of public accommodation include "a restaurant, bar, or other

5

establishment serving food or drink," § 12181(7)(B), and thus include Boston Market.[1] Failure to meet these requirements constitutes a violation of the ADA which may be enforced by individuals bringing suit for injunctive relief in federal court, § 12188(a).

"Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available." Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citation omitted). See 42 U.S.C. § 12188(a) (providing that the remedies available to individuals shall be those set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964); Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968) (noting that Title II allows for injunctive relief only).

Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations. Plaintiffs seeking prospective injunctive relief must demonstrate a "real and immediate threat" of injury in order to satisfy the "injury in fact" requirement of standing. Anderson, 943 F. Supp. 2d at 538 (citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

Judge Hornak noted that:

> In Title III ADA [c]ases in which disabled plaintiffs bring suit seeking an injunction to cure discriminatory practices, courts generally look to four factors to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and therefore whether the threat of injury is concrete and particularized: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiffs past patronage; (3) the definitiveness of the plaintiff's plan to

---

[1] Plaintiff cites § 12181(7)(F), but this would appear to be a typographical error because the subsection covers various kinds of service establishments (laundromats, dry cleaners, banks, etc.).

return; and (4) the plaintiff's frequency of nearby travel." "The four-factor test is one of totality, and a finding in favor of [the plaintiff] does not require alignment of all four factors."

Anderson, 943 F. Supp. 2d at 539 (quoting Harty v. Burlington Coat Factory of Pa., L.L.C., 2011 WL 2415169, at *4, 7 (E.D. Pa. June 16, 2011)). Defendant argues that the four-factor test should be applied and that Plaintiff fails to meet it. This four-factor test has not been adopted by the Third Circuit, but it has been cited by many district courts.[2] See Garner v. VIST Bank, 2013 WL 6731903, at *5 (E.D. Pa. Dec. 20, 2013) (citing cases). But see Klaus v. Jonestown Bank & Trust Co. of Jonestown, 2013 WL 4079946, at *7 (M.D. Pa. Aug. 13, 2013) (describing four-part test as "rigid" and "unendorsed" by the Third Circuit, but finding that blind plaintiff who challenged ATMs met it anyway).

Plaintiff argues that no court of appeals has adopted the four-factor test. The Court of Appeals for the Eleventh Circuit noted that a district court had applied the four-factor test, but stated that these factors are "not exclusive and that no single factor is dispositive. District courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1327, 1337 n.6 (11th Cir. 2013); see also Daniels v. Arcade, L.P., 477 F. App'x 125, 129 (4th Cir. 2012) (declining to adopt the four-factor test, which the court described as having "overly and unnecessarily complicate[d] the issue at hand."); D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1037-38 (9th Cir. 2008) (finding intent to return based on regularity of visits and stated intent but not proximity). Some courts have noted that the four-factor test is more appropriate to apply at the summary judgment stage, not on a motion to dismiss. See Brown v. Showboat Atlantic Propco, LLC, 2009 WL 690625, at *2 (D.N.J. Mar. 11, 2009); Wilson v. PFS

---

[2] This Court's research has not found any case from the Third Circuit discussing the issue of standing in an ADA Title III action.

7

LLC, 2006 WL 3841517, at *4 (S.D. Cal. Nov. 2, 2006).

Courts that have not adopted the four-factor test have cited the following three considerations regarding an intent to return for purposes of standing: 1) the plaintiff alleges past injury under the ADA (encountering some kind of barrier); 2) it is reasonable to infer from the complaint that the discriminatory treatment will continue; and 3) it is reasonable to infer from the complaint that, based on the plaintiff's past frequency of visits and the proximity of the defendant's place of business to the plaintiff's home, the plaintiff intends to return to this location in the future. Camarillo v. Carrols Corp., 518 F.3d 153, 158 (2d Cir. 2008) (legally blind patron who frequently visited restaurants near her home and did not receive "effective communication" of their menu options had standing to pursue claim). See also Chapman v. Pier 1 Imports, 631 F.3d 939, 948 (9th Cir. 2011); Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 62-63 (1st Cir. 2005).

The location at issue need not be near the plaintiff's home if she alleges a reason to return to the location. See Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002) (plaintiff who traveled weekly to city 70 miles from where he lived to visit his grandmother and encountered architectural barriers at grocery store had standing to sue); D'Lil, 538 F.3d at 1037 (disabled plaintiff who expressed intent to return to Santa Barbara area—as she frequently did for both business and pleasure—and stay at Best Western Encina if barriers were removed established standing); Houston, 733 F.3d at 1340 (plaintiff who lived in next county but traveled frequently 30.5 miles to supermarket near his lawyer's office and encountered architectural barriers had standing); Kreisler v. Second Ave. Dining Corp., 731 F.3d 184, 188 (2d Cir. 2013) (standing requirements met when "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [place of public accommodation]

8

to plaintiff's home, that plaintiff intended to return to the subject location."); Camarillo, 518 F.3d at 158 (legally blind patron who alleged that she repeatedly was rebuffed when she asked to have menus read to her had standing to sue based on past experience, reasonable inference that it would continue and reasonable inference that she would return); Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co., 765 F.3d 1205, 1211-12 (10th Cir. 2014) ("CCDC") (plaintiff who submitted affidavit stating that she intended to return to store with barriers at least six times per year had standing to sue).

The Deterrent Effect Test

More recently, a number of courts have rejected the "intent to return" test for standing in ADA Title III cases in favor of a "deterrent effect test." Under this theory, a disabled individual suffers a cognizable injury if he is deterred from visiting a non-compliant public accommodation because he has encountered barriers to his disability there. Chapman, 631 F.3d at 950.

The deterrent effect test relies on the statement in the ADA that: "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subsection does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). See Kreisler, 731 F.3d at 188 (disabled plaintiff in wheelchair saw inaccessible entrance to diner and did not have to attempt to overcome it prior to bringing suit); Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1037-38 (9th Cir. 2008) (plaintiff showed "intent to return" to store 550 miles from home once barriers were removed, thus really a deterrent effect case); Disabled Americans for Equal Access, Inc. v. Ferries Del Caribe, Inc., 405 F.3d 60, 64-65 & n.7 (1st Cir. 2005) (wheelchair user did not have to engage in the futile and indeed hazardous gesture of attempting to board ferry that had no accessible ramps or bathrooms to establish a cognizable injury); Frame v. City of Arlington, 657 F.3d 215, 235-36 & n.104 (5th

9

Cir. 2011) (en banc) (in a Title II case, wheelchair users did not have to limit their claims to noncompliant sidewalks they had actually tried to use).

It is true that, even under the deterrent effect test, the plaintiff must still assert an intent to return to the particular place or places where the violations are alleged to be occurring and thus a plaintiff does not have standing at all of a defendant's facilities scattered over a vast area that she would not realistically visit. See Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074-75 (7th Cir. 2013) (plaintiff who lived in Illinois but who was injured by spring-closing bathroom door of hotel in Overland Park, Kansas, and who expressed an intent to return for a relative's wedding had standing with respect to that hotel, but not the 56 other Courtyard Marriott hotels that used the same spring-hinged door closers). However, when a plaintiff has presented a class action complaint, the issue of standing is limited to the plaintiff's individual standing, not whether the plaintiff can challenge policies as they relate to a multitude of locations. Rather, that is an issue of class certification. As the Tenth Circuit recently observed:

> Abercrombie insists that our standing analysis does not end at the Park Meadows Mall. It argues that Ms. Farrar lacks standing to bring a claim for nationwide injunctive relief because she does not intend to visit every Hollister store with a porch—over 230 stores nationwide. We have no doubt that if Ms. Farrar were seeking a nationwide injunction in her own right, then she would lack standing to challenge accessibility barriers at stores she never intends to visit. Although the concepts of standing and adequacy of status to maintain a class action appear related, they are independent criteria and must be evaluated separately. See Hassine v. Jeffes, 846 F.2d 169, 175-76 (3d Cir. 1988). The question whether an injunction may properly extend to Hollister stores nationwide is answered by asking whether Ms. Farrar may serve as a representative of a class that seeks such relief. All that is necessary to answer this question is an application of Rule 23.

CCDC, 765 F.3d at 1212-13 (footnote and some citations omitted). See also Garner, 2013 WL 6731903, at *9 (plaintiff satisfied standing requirements with respect to the ATM he used and the challenges to the remaining ATMs represented an issue of class certification, not standing).

Defendant argues that: 1) Plaintiff lacks standing under the intent to return theory

10

because she has alleged proximity only as to one Boston Market but no reliable history of patronage or frequency and she has alleged only a cursory statement of intent to return; and 2) she lacks standing under a deterrent effect theory because the scant facts put into doubt that she would ever go to the several Boston Market properties or to "all Defendants' facilities" but for the alleged barriers.

Plaintiff responds that: 1) she has demonstrated an intent to return to the Restaurant based upon past discriminatory conduct, a reasonable inference that the conditions will continue and a reasonable inference that her stated intent to return to the Restaurant is plausible; 2) she satisfies the deterrent effect test based upon the barriers she has encountered at the Restaurant that impede her safe access thereto; and 3) the scope of her claims should be determined by application of Rule 23 and she does not have to visit every Boston Market to establish standing.[3]

In a reply brief, Defendant argues that Plaintiff's request for a nationwide "obey the law" injunction is barred by Rule 65 and that, if she wants to challenge barriers at other Boston Market locations that differ from the barriers she encountered at the Restaurant, she must find a representative plaintiff with standing to sue those stores. Defendant contends that, pursuant to Rule 65(d), an injunction must specify the specific action which it must do or refrain from doing and that "[o]verbroad language in an injunction that essentially orders a party to obey the law in the future may be struck from the order." Public Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 83 (3d Cir. 1990). Defendant notes that, in the cases that utilized such injunctions, there was a common architectural barrier being addressed. See CCDC, 765F.3d at 1209 (a stepped, porch-like structure at the entrance to over 230 Abercrombie & Fitch stores); Klaus, 2013 WL 4079946, at *6 (system-wide failure of bank to provide ATMs with

---

[3] On October 21, 2014, Plaintiff filed a motion for class certification (ECF No. 15). However, the motion has not been briefed and is not ripe for disposition at this time.

headphone jacks and braille instructions for blind patrons); Vondersaar v. Starbucks Corp., 2013 WL 4537341, at *1, 3 (C.D. Cal. Aug. 26, 2013) (excessive height of pick-up counters at Starbucks and corporate policy not to lower them). But in this case, the various Boston Market stores present different architectural barriers. In a surreply brief, Plaintiff responds that she is challenging a single architectural barrier at all of the cited Boston Market restaurants, namely the slopes of accessible parking spaces and/or access aisles, which exceed the ADA's maximum slope requirements.

The Court concludes that Plaintiff has satisfied the requirements of standing, both under the intent to return test and under the deterrent effect test. She has encountered architectural barriers at the Restaurant, which is the closest to her home and which she has visited at least three to four times per year, and she has expressed an intent to return even though the barriers remain.

With respect to other locations cited in the Amended Complaint, Plaintiff does not have to visit them to establish standing. Rather, that is an issue of class certification. Defendant's argument about the scope of available injunctive relief based upon different barriers at various stores goes to Plaintiff's ability to serve as a class representative, which is not ripe for disposition at this time. Therefore, Defendant's motion to dismiss the Amended Complaint based upon Plaintiff's lack of standing will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARAH HEINZL, individually and on behalf of )
all others similarly situated, )
        Plaintiff, )
)
vs ) Civil Action No. 14-997
)
BOSTON MARKET CORPORATION, ) Magistrate Judge Mitchell
        Defendant. )

<u>ORDER</u>

AND NOW, this 7th day of November, 2014

IT IS HEREBY ORDERED that the motion to dismiss the Amended Complaint for lack of jurisdiction filed by the Defendant (ECF No. 11) is denied.

IT IS FURTHER ORDERED that Defendant file an Answer to the Amended Complaint by November 21, 2014.

                                 s/Robert C. Mitchell_____
                                 ROBERT C. MITCHELL
                                 United States Magistrate Judge